**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20cr12** |
| | ) | |
| **RYAN DALLETEZZE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MOTION FOR COMPASSIONATE RELEASE**
**PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) WITH MEMORANDUM OF LAW**

The United States, and the entire world, continues to grabble with an unprecedented pandemic. In the United States alone, there have been more than thirty-five million confirmed cases and more than 616,000 deaths from COVID-19.[1] Older individuals and those with certain pre-existing medical conditions have a higher rate of serious complications associated with COVID-19 infection.[2]

On February 22, 2021, Mr. Dalletezze was sentenced to serve twenty-four (24) months after having pled guilty to Count One of the Criminal Information, to-wit: Aiding and Assisting Filing False Tax Returns, in violation of 26 U.S.C. § 7206(2). ECF Nos. 4, 7. Mr. Dalletezze's date of release is scheduled for December 19, 2022. *See* BOP.gov

**MR. DALLETEZZE'S MEDICAL INFORMATION**

Mr. Dalletezze is currently housed at Butner Low FCI, in Butner, North Carolina. He is 43 years old. As discussed at the February 22, 2021, Sentencing Hearing and also as detailed in the Presentence Investigation Report (PSR), Mr. Dalletezze has myriad medical conditions that require a substantial amount of prescription medications to manage these serious and life-threatening

---

[1] CDC, *Cases in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (Last visited August 9, 2021).

[2] CDC, *People at Increased Risk* (Jan. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (Last visited August 9, 2021).

conditions. *See* ECF Nos. 13, 14, 16, 22 and 29, ¶¶ 46-47, 51-60. As a result of these medical diagnoses, Mr. Dalletezze is severely immunocompromised. Additionally, Mr. Dalletezze suffers from a number of mental health disorders that are also documented in the PSR at ¶¶ 62-64, and he requires prescription medications to manage these conditions as well. Prior to his April 8, 2021, self-surrender to Butner Low FCI, a team of medical professionals were responsible for the management of his medical and mental health care. *See* ECF Nos. 13, 14, 16, 22 and *Id.*

It is important to note that Mr. Dalletezze had previously been on the same cocktail of medications for more than a decade and since his incarceration, he has not been receiving some of these medications that are necessary to manage his myriad medical and mental health conditions.

Mr. Dalletezze respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). This Motion should be granted because the global COVID-19 pandemic combined with Mr. Dalletezze serious medical/mental health conditions, present "extraordinary and compelling reasons" for compassionate release.

COVID-19 continues to spread through BOP facilities and the conditions of confinement are so deplorable at Butner Low FCI that shockingly and tragically, 17 inmates have died at the facility since the onset of the COVID-19 pandemic. The Bureau of Prisons is currently reporting that at Butner Low FCI, there are 0 inmates who are positive for the virus, 3 staff members who are currently positive with the virus, 17 inmate deaths, and 1 staff death. Additionally, 534 inmates and 43 staff members have recovered from the virus. *See* BOP.gov (last accessed August 9, 2021). It is clear from these shocking and tragic statistics, that Butner Low FCI has terribly failed to manage the virus and to keep the vulnerable inmate population safe. The Bureau of Prison's measures for preventing the spread of the virus have proven ineffectual, and inmates are continuing to die across the county as a result. As of the date of this filing, there are 242 BOP inmates who have tragically lost their lives to COVID-19. *Id.*

Mr. Dalletezze is not a danger to the community. He has a tremendous amount of support in the community, opportunities for employment and he has had no disciplinary record while incarcerated. A time-served sentence of approximately four months is sufficient, but not greater than necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553(a). This is the case, particularly in light of the cataclysmic events of this pandemic, the changes in the legal landscape that apply to Mr. Dalletezze's case, and the post-sentencing developments surrounding the fact that he has not been receiving some of the medications that he was receiving prior to his self-surrender to the Bureau of Prisons on April 8, 2021.

The risk to Mr. Dalletezze's life multiplies exponentially with each passing day. This Honorable Court should grant his Motion based on his significant medical and mental health conditions and also in light of the fact that he is not receiving the same cocktail of medications that he had previously been taking for the better part of a decade. Additionally, he has a tremendous amount of support in the community, a stable residence in which to live, opportunities for employment and he has demonstrated a clean disciplinary record while incarcerated. Together, these circumstances constitute "extraordinary and compelling reasons" warranting his immediate compassionate release.

## ARGUMENT

### I. The Court Has Jurisdiction to Grant Mr. Dalletezze's Immediate Release.

Mr. Dalletezze satisfies § 3582(c)'s 30-day waiting period. A defendant may file a motion for compassionate release when he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden's facility, ***whichever is earlier***[.]" First Step Act of 2018, §603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) (emphasis added). Congress selected this exceptionally short 30-day waiting period in order to expedite defendants' access to the courts

and the court's consideration of compassionate release motions. *See, e.g., United States v. Haney*, 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).

The appeal of Mr. Dalletezze's denial of his request for Compassionate Release was denied by the Warden at Butner Low FCI on June 22, 2021. "[T]he majority of district courts, as well as the only appellate courts to have considered the issue,[3] have ruled that prisoners who seek compassionate release under Section 3582 are not required to fully exhaust all administrative remedies available to them, so long as 30 days have passed from the warden's receipt of the request." *United States v. Eberbaugh*, 2020 WL 4804951, at *2 (S.D. W. Va. Aug. 18, 2020). The Fourth Circuit recently granted a joint motion to remand where the government changed its position on exhaustion, and both parties agreed that the defendant satisfied § 3582(c)(1)(A)'s exhaustion provision because 30 days had passed since he requested compassionate release from the warden. *United States v. Banks*, No. 20-7678 (4th Cir. Dec. 9, 2020). Moreover, courts in this District and throughout the country have found that the 30-day exhaustion requirement is satisfied upon the passage of thirty days since the request for compassionate release, regardless of whether the BOP issues a denial of the request in the meantime.[4]

It is the "official position of the Department of Justice and the Bureau of Prisons [that]: a defendant can file a motion for compassionate release in district court 30 days after requesting relief

[3] *See United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020) ("After watching decades of the BOP Director's failure to bring any significant number of compassionate release motions before the courts, Congress allowed people seeking compassionate release to avoid BOP if BOP rejects their motions or fails to act on them within a short time period, only 30 days."); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) ("the statute states that the defendant may file the motion thirty days after the warden receives his request," concurring with the Government's concession of error); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

[4] *See, e.g., United States v. Wilson*, Case No. 2:11cr180, Dkt. No. 663, at 4-5 (E.D. Va. May 29, 2020) (J. Jackson) (finding exhaustion satisfied where defendant submitted request for compassionate release to the warden on March 27, 2020, which was subsequently denied on April 10, 2020, within the 30 days of the request); *United States v. Latney*, Case No. 1:19cr202. Dkt. No. 36, at 4, n.4 (E.D. Va. June 2, 2020) (J. Trenga); *United States v. Robinson*, Case No. 3:10cr261, Dkt. No. 86, at 8 (E.D. Va. July 17, 2020) (J. Lauck); *United States v. Geister*, Case No. 2:10cr127, Dkt. No. 52, at 3-4 (E.D. Va. Aug. 14, 2020) (J. Allen); *United States v. Ray*, Case No. 1:18cr177, Dkt. No. 33, at 1 (E.D. Va. Aug. 17, 2020)

from the Warden, even if the Warden denies the relief within 30 days."[5] The government has uniformly adopted this position as well, stating that "[b]ecause the exhaustion requirement in § 3582(c)(1)(A) is satisfied by two alternative means, and an inmate may file 'whichever' of these means is completed first, a defendant may rely on the 30-day period ***even if the administrative appeals process is not complete***." Response of the United States to the Court's October 28, 2020 Order, *United States v. Bowens*, No. 3:98cr110, Dkt. No. 321, at *3 (E.D. Va. Nov. 6, 2020) (emphasis added).[6]

---

(J. Brinkema); *United States v. McCoy*, Case No. 3:14cr44. Dkt. No. 165 at 8 (E.D. Va. Sept. 8, 2020) (J. Novak) ("Defendant submitted a request for compassionate release to the warden . . . on April 9, 2020, and received a denial letter on April 17, 2020. . . Accordingly, the Court finds that Defendant has exhausted the administrative remedies outlined under § 3582(c)(1)(A) and that the Court has jurisdiction to consider the merits of Defendant's Motions."); *United States v. Seck*, Case No. 1:15cr221, Dkt. No. 69 at 4 (E.D. Va. Oct. 9, 2020) (finding that prior decisions on the issue are no longer controlling, and holding that the "the Court is guided by the plain text of the statute, which only requires a Defendant to wait for 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility' before filing a compassionate release motion.") (J. O'Grady).

[5] *See* Gov't Supplemental Response to Def. Mtn. for Compassionate Release, *United States v. Andre Woodson,* 1:13-cr-20180-CMA, ECF No. 402 at 2 (S.D.Fl. June 5, 2020); *see also* Brief for the United States*, US v. Alam*, 20-1298, at 24 (6th Cir. Apr. 16, 2020); Brief of the United States, *US v. Millage*, 20-30086, at 14 n. 14 (9th Cir. Apr. 24, 2020); Government Response, *US v. Stephens*, 3:10-cr-00210-WHR, at 8 (S.D. Oh. May 6, 2020); Govt Opposition, *US v. Carter*, 1:16-cr-00156-TSC, at 16 n. 9 (D.D.C. May 4, 2020); Government's Letter, *US v. Meli*, 1:17-cr-00127-KMW (S.D.N.Y May 1, 2020); Govt Response, *US v. Robinson*, 3:18-cr-00597-RS, at 3 (N.D. Cal. Apr. 24, 2020); Answer, *Wilson v. Williams*, 4:20-cv-00794-JG, ECF 10, at 12-13, ECR 10-2 at ¶5 (N.D. Oh. Apr. 17, 2020).

As the government has noted, the Bureau of Prison's website states as follows: "[U]nder the FSA, an inmate may now file a motion for compassionate release directly with the sentencing court 30 days after making a request to the BOP or after exhausting their administrative remedies." *See* BOP website at https://www.bop.gov/inmates/fsa/faq.jsp#fsa_compassionate_release (under First Step Act: Frequently Asked Questions, Fed. Bureau of Prisons (accessed June 5, 2020)).

[6] *See also* Response of the United States to Defendant's Briefing on Exhaustion, *United States v. Kimbrough*, No. 3:09cr220, Dkt. No. 82 at 3 (E.D. Va. Sept. 8, 2020) ("[T]he United States agrees with the defendant that the exhaustion requirement is satisfied upon the passage of thirty days since a prisoner's request for compassionate release, regardless of whether the BOP issues a denial of the request in the meantime.") (internal quotation marks omitted); United States' Response Opposing Defendant's Motion for Compassionate Release, *United States v. Smith*, No. 2:18cr96, Dkt. No. 37 at 12, n.5 (E.D. Va. Apr. 17, 2020) (conceding that "if the BOP rejects the request or takes no action within the 30 day window, the inmate is then free to press his position in the appropriate federal court"); United States' Response in Opposition to Defendant's Motion for Compassionate Release, *United States v. Zayas*, No. 1:19cr297, Dkt. No. 22 at 10-11 (E.D. Va. June 14, 2020).

Accordingly, Mr. Dalletezze has satisfied the 30-day exhaustion requirement contained in 18 U.S.C. § 3582(c), and his motion is ripe for review.

## II. This Honorable Court has authority to determine whether "extraordinary and compelling reasons" exist for Mr. Dalletezze's release.

This Court has the authority to order Mr. Dalletezze's immediate release. Section 3582(c)(1)(A)(i) states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"[7] The Fourth Circuit has acknowledged that "district courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy,* 981 F.3d 271, 284 (4th Cir. 2020) (quoting *United States v. Zullo,* 976 F.3d 228, 230 (2020)) (emphasis in original). Thus, "courts are not bound by determinations made by the Director of the Bureau of Prisons ("BOP"), nor must they rigidly defer to stale policy statements issued by the Sentencing Commission prior to the enactment of the First Step Act." *United States v. Singleton*, 1:95cr179, ECF No. 117 (E.D. Va. Jan. 7, 2021), *citing United States McCoy,* 981 F.3d at 281 ("What § 3582(c)(l)(A) requires is that sentence reductions be consistent with 'applicable policy statements.;' And here, that consistency requirement

[7] *See United States v. Mangum*, 2:17-cr-50, ECF No. 55 (E.D. Va. Jun. 22, 2020) (holding that 73-year-old prisoner with history of serious heart conditions, high blood pressure, and high cholesterol met the extraordinary and compelling reasoning standard for compassionate release); *see also United States v. Joyce*, 2:17-cr-103, ECF No. 55 (E.D. Va. July 1, 2020) (determining that 35-year-old prisoner with history of bronchitis, tobacco smoking, hypertension, high cholesterol, and obesity met the extraordinary-and-compelling-reasoning standard for compassionate release, though ultimately release was not appropriate based on dangerousness).

simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement.'").

Here, "extraordinary and compelling reasons" exist that warrant a reduction in Mr. Dalletezze's sentence, and the factors in 18 U.S.C. § 3553(a) allow for such a reduction. *See United States v. Williams,* 1:92-cr-0083-01, ECF No. 349, at 2 (E.D. Va. Jan. 5, 2021); *United States v. Provost*, 2020 WL 4274570, at *3 (E.D. Va. July 24, 2020).

## III. There Are Extraordinary and Compelling Reasons for Release in this Case.

A sentence reduction in Mr. Dalletezze's case is appropriate because the COVID-19 pandemic, in conjunction with the fact that Mr. Dalletezze is not receiving some of the medications that he was previously prescribed prior to his self-surrender to the Bureau of Prisons, constitute an "extraordinary and compelling" reason warranting relief. Mr. Dalletezze is incarcerated at Butner Low FCI, a facility that has struggled unsuccessfully to contain and maintain the virus as evidenced by the aforementioned deplorable statistics. Tragically, 17 inmates have died from the virus while under the care of the same Warden who denied Mr. Dalletezze's appeal of the denial to grant Compassionate Release.

### *A. The current public health crisis provides an additional reason for compassionate release.*

Mr. Dalletezze's request for a reduction in his sentence comes at an unprecedented time: the deadly COVID-19 pandemic, which "has given rise to exceptional and exigent circumstances that require the prompt attention of the courts." *United States v. Roeder*, 807 Fed. App'x 157, 161 (3d Cir. 2020).

In light of Mr. Dalletezze's numerous and well-documented medical conditions, he continues to remain vulnerable due to the conditions of confinement.[8] And conditions at Butner Low FCI have

[8] *See* CDC, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq html (go to "People Who are Incarcerated at Correctional and Detention Facilities," select "Do I have a greater chance of getting COVID-19?" ("People in correctional and detention facilities are at greater

only deteriorated over the course of the pandemic. Tragically 17 inmates have died due to the BOP's failure to contain the virus at Butner Low FCI.

The continued proliferation of the pandemic within Butner Low FCI and other federal prisons has not only put Mr. Dalletezze's already fragile and compromised health directly at risk, but it has also increased the punitive nature of his sentence. In this vein, courts have recognized that as prison conditions get harsher, sentences should get shorter. *See United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007) (finding merit to the argument that "the harsher the conditions, the shorter the sentence should be."). As one legal scholar recently wrote: "Crime is supposed to be antisocial; punishment should be prosocial. But American punishment has morphed into its own enemy: it has become antisocial itself."[9] Never has that been more true than today, when punishment in federal prison now includes contracting a deadly disease, suffering in "quarantine" or solitary confinement, having limited contact with family and friends, and restricted access to rehabilitative programming that is supposed to be one of the purposes of sentencing mandated by statute. In granting compassionate release to a man convicted of sexually assaulting his partner's daughter, the court found:

> [T]he factor relating to 'the need for just punishment' has dramatically shifted since sentencing. The lockdown measures in prisons across the country like [FCI Edgefield] have undergone to mitigate the spread of the pandemic have made confinement much more punitive than was contemplated at sentencing. . . This factor has much greater weight when balancing it with the other factors and when considering how much of his sentence [the defendant] has served.

*United States v. Indarte*, 2020 WL 6060299, at *4 (W.D. Wash. Oct. 14, 2020). In accordance with this reasoning, courts have found the prison conditions during the pandemic to be a factor in granting compassionate release and in imposing lower sentences. *See United States v. Olawoye*, 2020 WL 4559816, at *5 (D. Or. Aug. 7, 2020) ("The sentence the defendant has served has undoubtedly been harsher

---

risk for some illnesses, such as COVID-19, because of close living arrangements with other people.")) (last visited July 23, 2021).

[9] Joshua Kleinfeld, *Two Cultures of Punishment*, 68 Stan. L. Rev. 933, 1036 (2016).

than the one originally contemplated at the time of sentencing."); *United States v. Armstrong*, 2020 WL 4366015, at *4 (S.D. Cal. July 30, 2020) ("[T]he Court is aware that defendants committing similar offenses now, in the time of COVID-19, are receiving vastly lower sentencing recommendations because their time in custody is harsher. . . Therefore, the Court finds reducing [the defendant's] sentence would also avoid unwarranted disparities between similarly situated defendants."). *See United States v. Noriega*, 40 F. Supp. 2d 1378, 1379 (S.D. Fla. 1999) ("There is little question that [segregated confinement] is a more difficult type of confinement than in general population. For some, the consequences of such deprivation can be serious."). Thus, "[r]eleasing a prisoner who is for all practical purposes deserving of compassionate release during normal times is all but mandated in the age of COVID-19." *United States v. Resnick*, 14-CR-810 (CM), 2020 WL 1651508, at *7 (S.D.N.Y. Apr. 2, 2020).

**V. Mr. Dalletezze's Release Adheres to the 18 U.S.C. § 3553(a) Sentencing Factors.**

The First Step Act and the Fourth Circuit's decision in *McCoy* now authorize the Court to apply the 18 U.S.C. § 3553(a) factors to sentence Mr. Dalletezze as he comes before the court today.

Certainly Mr. Dalletezze's offense conduct was serious. "The legal backdrop against which his punishment is imposed has now shifted, and binding authority grants this Court the opportunity to reassess his circumstances to a more compassionate end." *Williams*, Case No. 1:92cr83, at *2. Mr. Dalletezze—at 43 years old, following approximately four months in prison, separated from his loved ones—is a contrite, mature, and thoughtful man, who has taken his incarceration seriously and has remained disciplinary free.

The offense conduct, and Mr. Dalletezze's criminal history were surely considered when he was sentenced, and they should be considered as part of this Court's analysis now. But this Honorable Court is not simply reweighing the sentencing factors as they existed approximately four months ago. Rather, the Court has full discretion to determine whether there are "extraordinary and compelling

reasons" for release, and it *must* consider post-offense developments under 18 U.S.C. § 3553(a), which provide "the most up-to-date picture" of Mr. Dalletezze's history and characteristics. *See Pepper v. United States*, 562 U.S. 476, 490-93 (2011); *see also Williams*, Case No. 1:92cr83, at *7 (noting that the Defendant committed the underlying offense at the age of 37, after accumulating an extensive criminal record consisting of armed robberies, assaults, attempted jail break, and other crimes of violence, but granting compassionate release because the defendant "today is not the person the Court sentenced 30 years ago.") (internal citation omitted).

*A. Mr. Dalletezze has made strides during his approximately four months of incarceration, but he is not receiving some of the prescription medications that he was previously prescribed while out of custody.*

Although compassionate release may not be granted based on rehabilitation alone, courts across the country have taken rehabilitation into consideration when granting compassionate release. *See, e.g., McCoy v. United States,* No. 2:03-cr-197, 2020 WL 2738225 at *3 (E.D. Va. May 26, 2020) (granting release to inmate with "impressive record of rehabilitation").[10] Mr. Dalletezze's institutional record is truly indicative of a man who is ready to be reunited with society and with his loving and supporting family and friends. Since his incarceration, he has had absolutely no disciplinary issues, and while he has not been able to engage in programming due to the pandemic, Mr. Dalletezze has used his time wisely.

[10] *See also United States v. Clark,* 467 F. Supp. 3d 684, 689-94 (S.D. Iowa 2020) (granting compassionate release to petitioner whose "substantial rehabilitation cuts in favor of release, even if it is insufficient to justify release on its own" and noting that "Congress indicates rehabilitation may be considered with other factors"); *United States v. Lott,* No. 95cr72, 2020 WL 3058093 at *1 (S.D. Cal. June 8, 2020) (granting compassionate release to petitioner who presented a "remarkable record of rehabilitation showing that he is not a danger to the public"); *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020) (granting compassionate release to petitioner who the court found was "fully and unconditionally rehabilitated" because he "has maintained an extraordinarily positive outlook and attitude and has sought to improve himself to the utmost extent possible").

Clearly, Mr. Dalletezze has taken the initiative to improve himself, which not only speaks to his personal character, but is suggestive of his ability to be successful in the community. By any standard, Mr. Dalletezze ability to remain free from any disciplinary issues coupled with his impressive support in the community clearly demonstrates Mr. Dalletezze's positive ability to successfully reintegrate into society. Mr. Dalletezze's demonstrated conduct, his commitment to rehabilitation, in conjunction with the other factors discussed in this motion, prove that he is an appropriate candidate for compassionate release.

The other post-offense development that Mr. Dalletezze respectfully requests that this Honorable Court consider is the fact that he is not receiving some of the prescription medications that he was previously prescribed prior to his self-surrender to the Bureau of Prisons. At the Sentencing Hearing in his case, this Honorable Court considered Mr. Dalletezze's serious life-threatening medical condition and other physical and mental health ailments. Defense counsel argued that the Bureau of Prisons was not in a position to provide the critical medical care necessary to effectively manage Mr. Dalletezze's myriad medical and mental health conditions. While he was out-of-custody, Mr. Dalletezze's medical and mental health conditions were well-managed by a team of highly skilled and trained medical and mental health professionals. If Mr. Dalletezze does not receive the critical and necessary treatment, he will suffer long-standing and profound setbacks to his physical and mental health.

*B. Mr. Dalletezze has a viable release plan and opportunities for employment, which, coupled with supervised release, will ensure his successful transition into the community.*

Mr. Dalletezze enjoys the support of loving family members and friends who are eager to welcome him home. With their love and committed support, Mr. Dalletezze will undoubtedly enjoy a successful reintegration into society. If released, Mr. Dalletezze plans to live at the family home where he resided while on his year-long successful period of Pretrial Supervision. Mr. Dalletezze would be

able to quarantine for two weeks in a bedroom that is isolated from the rest of the family in the home. If Mr. Dalletezze is released, his family is more than willing to pick him up from Butner Low FCI.

Additionally, if released, Mr. Dalletezze will not just be left to his own devices in the community. He has one (1) year of supervised release awaiting him upon release. *See United States v. Early*, 2020 WL 2112371, at *5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and the Court will not hesitate to recommit him to prison should he again go astray."). This Honorable Court may also impose home confinement as an additional punishment and as another way to monitor Mr. Dalletezze's conduct.

**CONCLUSION**

For the reasons above, Mr. Dalletezze respectfully requests that this Honorable Court order his immediate compassionate release.

Respectfully submitted,

RYAN DALLETEZZE

/s/

Kirsten R. Kmet
VSB Number: 47786
Assistant Federal Public Defender
Attorney for Ryan Dalletezze
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, VA 23510
Telephone: (757) 457-0850
Facsimile: (757) 457-0880
Email: kirsten_kmet@fd.org

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of August 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to all counsel of record.

/s/

Kirsten R. Kmet
VSB Number: 47786
Assistant Federal Public Defender
Attorney for Ryan Dalletezze
Office of the Federal Public Defender
150 Boush Street, Suite 403
Norfolk, VA 23510
Telephone: (757) 457-0800
Facsimile: (757) 457-0880
Email: kirsten_kmet@fd.org